Slip Op. 12-94

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SKF USA INC., SKF FRANCE S.A., SKF AEROSPACE FRANCE S.A.S., SKF GMBH, and SKF INDUSTRIE S.P.A.**,       Plaintiffs, <br><br> v. <br><br> **UNITED STATES**,       Defendant, <br><br> and <br><br> **THE TIMKEN COMPANY**,       Defendant-Intervenor. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 07-00393 |

## OPINION

[Sustaining a decision issued by the U.S. Department of Commerce upon remand in litigation contesting the final results of administrative reviews of antidumping duty orders on ball bearings and parts thereof]

Dated: July 18, 2012

    *Herbert C. Shelley*, *Alice A. Kipel*, and *Laura Ardito*, Steptoe & Johnson LLP, of Washington, DC, for plaintiffs.

    *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, and *Jeanne E. Davidson*, Director. Of counsel on the brief was *Jonathan Zielinkski*, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

    *Geert M. De Prest* and *Terence P. Stewart*, Stewart and Stewart, of Washington, DC, for defendant-intervenor.

    **Stanceu, Judge:** In this litigation, plaintiffs SKF USA Inc., SKF France S.A., SKF Aerospace France S.A.S., SKF GmbH, and SKF Industrie S.p.A. (collectively, "SKF") contested

Court No. 07-00393                                                                                                    Page 2

a determination (the "Final Results") that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude the seventeenth administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom. *Ball Bearings & Parts Thereof from France, Germany, Italy, Japan, Singapore, & the United Kingdom: Final Results of Antidumping Duty Admin. Reviews & Rescission of Review in Part*, 72 Fed. Reg. 58,053 (Oct. 12, 2007). Before the court is a decision (the "Remand Redetermination") that Commerce issued in response to the court's remand order in *SKF USA Inc. v. United States*, 35 CIT __, Slip Op. 11-126 (Oct. 14, 2011). *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 23, 2011), ECF. No. 81 ("*Remand Redetermination*"). Plaintiffs oppose the Remand Redetermination, which defendant-intervenor The Timken Company ("Timken") supports. The court concludes that the Remand Redetermination complies with the court's remand order and is in accordance with law.

## I. BACKGROUND

The background of this case is set forth in *SKF USA Inc. v. United States*, 33 CIT __, __, 659 F. Supp. 2d 1338, 1340-42 (2009) ("*SKF I*") and is supplemented herein.

The court sustained the Final Results in *SKF I*, the judgment in which was affirmed in part, and reversed in part, by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals"). *SKF USA Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011) ("*SKF II*"). The court issued its remand order following issuance of the mandate of the Court of Appeals. CAFC Mandate in Appeal #2010-1128 (Mar. 29, 2011), ECF No. 75.

## II. DISCUSSION

The Court of Appeals affirmed the decision of the Court of International Trade upholding the Department's use of the "zeroing" methodology in the seventeenth review.[1] *SKF III*, 630 F.3d at 1375. The Court of Appeals also affirmed this Court's decision that neither the antidumping statute nor concerns for due process prohibited the method Commerce used to calculate an element of constructed value, cost of production, for merchandise that SKF purchased from an unaffiliated supplier. *Id.* at 1372. Under this method, Commerce used the unaffiliated supplier's actual production costs rather than SKF's acquisition costs. *Id.* at 1368-69; Tariff Act of 1930 ("Tariff Act"), § 773, 19 U.S.C. § 1677b(b)(3) (2006) (defining cost of production). The Court of Appeals reversed and remanded this case, concluding that Commerce had not addressed properly certain concerns SKF had raised during the seventeenth review pertaining to the use of the production cost data of the unrelated supplier of subject merchandise. *SKF III*, 630 F.3d at 1375.

During its original investigation and the first sixteen administrative reviews, Commerce used SKF's acquisition cost in constructing the normal value of merchandise SKF obtained from the unrelated supplier. *Id.* at 1368-69. During the seventeenth review, Commerce changed its practice by constructing normal value using the unaffiliated supplier's costs of production. *Id.* at 1369-70. Reversing and remanding the decision in *SKF I*, the Court of Appeals rejected, in part, the justification Commerce offered for the change in practice, concluding that Commerce

---

[1] "Zeroing" is a methodology under which individual sales of subject merchandise made at prices above normal value are assigned a margin of zero, rather than a negative margin, prior to the calculation of a weighted-average percentage dumping margin. *SKF USA Inc. v. United States*, 630 F.3d 1365, 1370 (Fed. Cir. 2011).

had failed to address two significant concerns plaintiffs had raised during the seventeenth administrative review.  *Id.* at 1373-75 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)).  The Court of Appeals concluded, first, that Commerce did not address SKF's concern that SKF, as a result of the change in practice, would be unable to adjust its pricing to avoid dumping or decrease its antidumping duty liability because it would lack knowledge of its supplier's production cost data.  *Id.* at 1374 ("Commerce did not address SKF's concern that it could not control its pricing to avoid dumping in its Issues and Decision Memorandum or explain why this concern was unjustified or why it was outweighed by other considerations.").  Second, the Court of Appeals concluded that "Commerce did not address SKF's concern that Commerce would apply an adverse inference if the unaffiliated supplier failed to provide cost data." *Id.*; *see* Tariff Act, § 776, 19 U.S.C. § 1677e(b) (governing use of adverse inferences).  The Court of Appeals concluded that "[w]hile no such adverse inference was drawn here, this concern must be considered in assessing the overall reasonableness of Commerce's approach."  *SKF III*, 630 F.3d at 1374-75.  The Court of Appeals noted that, in the subsequent (eighteenth) review, Commerce used an inference adverse to SKF based on the failure of SKF's unaffiliated supplier to fully cooperate with an information request and the Court of International Trade disallowed such use of an adverse inference.  *Id.* at 1375 (citing *SKF USA Inc. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1264, 1268 (2009) ("*SKF II*")).  Opining that "[u]se of adverse inferences may be unfair considering SKF has no control over its unaffiliated supplier's actions," the Court of Appeals stated that "Commerce must explain why SKF's concern is unwarranted or is outweighed by other considerations."  *Id.*

      The Remand Redetermination addresses each of the two issues identified by the Court of Appeals.  Commerce explained that SKF's concern that SKF would be unable to change its pricing to minimize dumping does not outweigh the goals of calculating dumping margins as accurately as possible and maintaining consistency with past practice.  *Remand Redetermination* 4.  As to the former goal, Commerce stated that "acquisition costs may not capture the actual production data, which would distort an exporter's margin because of missing cost elements" and that "there can be no more accurate data to use in calculating the [cost of production] of subject merchandise than the actual cost of producing that merchandise."  *Id.* at 3.  With respect to the latter goal, Commerce cited various administrative decisions which it claims constitute a practice of basing constructed value on the actual cost data of the supplier as opposed to acquisition cost.  *Id.*  As a third consideration, Commerce pointed out that in certain other situations under the antidumping laws "a respondent does not have control over the information used to calculate a dumping margin and, thus, would not be able to adjust its pricing to avoid dumping."  *Id.* at 5.

      The court considers the Department's first point, reliance on furthering the goal of accuracy, to be a valid consideration.  There is also validity to the Department's third point, which is that the antidumping statute does not give a respondent an unqualified right to know all of the information from which the respondent's margin will be derived so that the respondent may adjust its prices accordingly.  *Id.* at 4-5 ("The statute does not . . . require the Department to rely solely upon data over which a respondent has control.").  The Department's reliance on a general practice to use actual costs is, however, less persuasive.  The strength of the Department's position is compromised by the fact that, with respect to the orders in question and

with respect to these particular plaintiffs, the practice was the opposite: the Department used acquisition cost in the investigation and the first sixteen reviews. *SKF III*, 630 F.3d at 1368. However, the Remand Redetermination contains an explanation for the departure from *that* practice.

On the whole, the court concludes that the Department's explanation has addressed adequately the concern SKF raised concerning the ability to adjust prices. Commerce does not conclude that SKF's concern was unjustified; rather, it explains in the Remand Redetermination why other considerations–including, most significantly, the goal of achieving accuracy in the calculation of a dumping margin–outweigh that concern. Commerce is owed a degree of deference for its methodological choice for calculating the cost of production when determining constructed value.

The court also concludes that the Remand Redetermination addresses adequately SKF's concern that the Department's change of practice could lead, in the future, to the Department's using an inference adverse to SKF should the unaffiliated supplier fail to cooperate. *See* 19 U.S.C. § 1677e(b) (providing that when Commerce is selecting among facts otherwise available Commerce may use an inference that is adverse to the interests of a party that "failed to cooperate by not acting to the best of its ability to comply with a request for information . . ."). The Remand Redetermination states that "[t]he application of adverse facts available is a respondent-specific, fact-driven determination that is based upon a respondent's level of cooperation in responding to the Department's request for information." *Remand Redetermination* 7. Commerce thus indicates that a resort to an inference adverse to a

respondent will not necessarily be the consequence of a refusal on the part of a respondent's unaffiliated supplier to provide cost of production data.

The Remand Redetermination recounts, as did the Court of Appeals, that the Department's resort to an adverse inference in the eighteenth review was overturned by the Court of International Trade. *Id.* at 7-8 (citing *SKF II*, 33 CIT at __, 675 F. Supp. 2d at 1278). In disallowing the use of an adverse inference in the eighteenth review, the Court of International Trade held that Commerce may not use an adverse inference without a finding, based on substantial record evidence, that the respondent itself (in that case, SKF GmbH of Germany) failed to cooperate as required by § 1677e(b). *SKF II*, 33 CIT at __, 675 F. Supp. 2d at 1278. Concluding that the Department impermissibly drew an inference adverse to SKF based solely on a finding that the unaffiliated supplier failed to cooperate, this Court rejected the Department's construction of § 1677e(b) and concluded, further, that the Department had abused its discretion under that provision. *Id.* at __, 675 F. Supp. 2d at 1277-78.

In citing *SKF II* as part of its response to SKF's concern regarding an adverse inference, Commerce explains that in that case, Commerce did not rely on an adverse inference in the decision it reached upon remand. *Remand Redetermination* 7. Commerce thus acknowledges that any use of an adverse inference is subject to a significant limitation where a respondent is unable to obtain the cooperation of an unaffiliated party in possession of the cost data: the failure to cooperate must be on the part of the respondent itself, not the unaffiliated party.

Plaintiffs' arguments against the Remand Redetermination fail to persuade the court. Plaintiffs argue that the Remand Redetermination failed to confront how the Department's preference for actual production cost data prevents a respondent from managing sales prices so

as to minimize dumping. Pls.' Comments on Final Results of Redetermination Pursuant to Remand 3-5 (Jan. 23, 2012), ECF No. 84 ("Pls.' Comments"). Plaintiffs argue that, as a consequence of their inability to manage dumping margins, they will be unable to avail themselves of a Commerce regulation that allows parties to seek revocation from an antidumping duty order based on three consecutive years of sales at not less than fair value. *Id.* at 5-8; 19 C.F.R. § 351.222 (2007). As the court explained above, the Remand Redetermination justifiably concludes that SKF does not have an unqualified right to a margin determined only according to information over which it has control. And Commerce permissibly concluded that any interest SKF has in doing so, including SKF's interest in seeking revocation from an order, is outweighed by the importance of calculating accurate margins.

SKF also argues that the Remand Redetermination "merely dismisses" the concern that Commerce will use an inference adverse to the interests of a respondent based on an unaffiliated supplier's failure to cooperate with a request for production cost data. Pls.' Comments 8. SKF suggests that the gravity of this concern is demonstrated by Department's use of an adverse inference in the eighteenth review of this order. *Id.* The court disagrees with SKF's characterization of the Remand Redetermination as merely dismissive of SKF's concern. As the Remand Redetermination acknowledges, the statute precludes Commerce from using an adverse inference against a respondent unless that respondent, as opposed to the unaffiliated supplier, failed to act to the best of its ability to cooperate with a request for information.

### III. CONCLUSION

The Remand Redetermination addresses adequately both of the concerns that SKF raised in the seventeenth review and that the Court of Appeals held to have been inadequately

**Court No. 07-00393** **Page 9**

addressed in the Final Results. The Remand Redetermination complies with the court's remand order and is otherwise in accordance with law. The court will enter judgment accordingly.

                                                /s/ Timothy C. Stanceu
                                                Timothy C. Stanceu
                                                Judge

Dated: July 18, 2012
       New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SKF USA INC., SKF FRANCE S.A., SKF AEROSPACE FRANCE S.A.S., SKF GMBH, and SKF INDUSTRIE S.P.A.**, <br><br>Plaintiffs, <br><br>v. <br><br>**UNITED STATES**, <br><br>Defendant, <br><br>and <br><br>**THE TIMKEN COMPANY**, <br><br>Defendant-Intervenor. | Before:  Timothy C. Stanceu, Judge <br><br> Court No. 07-00393 |

## JUDGMENT

Upon review of the *Final Results of Redetermination Pursuant to Ct. Remand* (Dec. 23, 2011), ECF. No. 81 ("Remand Redetermination"), all comments thereon, and upon full consideration and due deliberation, it is hereby

**ORDERED** that the Remand Redetermination be, and hereby is, AFFIRMED.

        /s/ Timothy C. Stanceu  
        Timothy C. Stanceu  
        Judge

Dated: July 18, 2012  
       New York, New York